IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| HANNAH BRYANT, | |
| Plaintiff, | **8:21-CV-335** |
| vs. | |
| NATIONWIDE ANESTHESIA SERVICES, INC., | **TEMPORARY RESTRAINING ORDER** |
| Defendant. | |

This matter comes before the Court on Plaintiff's Motion for Temporary Restraining Order, Filing 3. Pursuant to Federal Rule of Civil Procedure 65(b), Plaintiff's counsel states in writing that it has not made efforts to provide notice to Defendant "because immediate and irreparable loss, injury, or damage will result." Filing 3 at 2. Having reviewed the Verified Complaint and attachments, Filing 1; the Motion for Temporary Restraining Order, Filing 3; and the Brief in Support of Motion for Temporary Restraining Order, Filing 4; the Court concludes Plaintiff's Motion for Temporary Restraining Order should be granted. The matter is set for further hearing regarding the issuance of a preliminary injunction.

## I.     BACKGROUND

Plaintiff, Hannah Bryant, is a resident of Omaha, Nebraska. Filing 1 at 2. Defendant, Nationwide Anesthesia Services, Inc. ("NASI"), is a Florida corporation with its principal place of business in Georgia that transacts business in Nebraska. Filing 1 at 2. It operates as a staffing firm for businesses with anesthesia-staffing needs. Filing 1 at 6. Bryant worked in recruiting and provider services for NASI beginning in February 2021. Filing 1 at 6.

1

Near the commencement of her work on or about February 15, 2021, Bryant and NASI entered into a contract entitled Independent Contractor Agreement. Filing 1 at 3; Filing 1-1. The agreement included a provision entitled "Non-Compete and Non-Solicitation" in section VII which stated as follows:

(a) In view of the Confidential Information retained by or disclosed to CONTRACTOR as hereinabove set forth, and as a material consideration and inducement to the Company to enter into this Agreement and continue Agreement with CONTRACTOR, CONTRACTOR hereby covenants and agrees that, unless the Corporations, their successors or assigns shall cease to engage in business, during the period commencing on the date hereof and continuing for twenty-four (24) months following the date contractual agreement with the Company terminates (the "Non-Compete Period"), CONTRACTOR will not alone or in combination with others or in any manner whatsoever, within the United States directly or indirectly [as defined in Section VII(d) below] without the prior written consent of the Corporations;

 (i) run, own, manage, operate, control, be employed by, provide consulting services to, be a manager of, participate in, lend CONTRACTOR's name to, invest in or be connected in any manner with the management, ownership, operation or control of any business, venture, governmental or quasi-governmental agency, or activity that (A) competes with the business or any part thereof as conducted by the Corporations; or (B) in any way provides or may provide services similar to those provided by the Corporations that constitute, relate to, or concern their respective businesses. CONTRACTOR will not be considered to be in default of this Section VII (a) (i) solely by virtue of CONTRACTOR holding for portfolio purpose, as a passive investor, not more than one percent (1%) of the issued and outstanding equity securities of a corporation, the equity securities of which are listed or quoted on a national stock exchange or a national over-the-counter market;

(ii) solicit, recruit, offer employment, employ, engage as an independent Contractor or a consultant, lure or entice away or in any other manner persuade or attempt to persuade any person who is a contractor, independent Contractor, consultant, locum tenens, or referral source to or for the Corporations, to leave the employ of, the engagement by, or reduce his or her services to or referrals to or from, the Corporations;

(iii) contact or accept business from any past, present or active prospective customer or referral source of or to the Corporations, for the purposes of (A) providing any service provided by the Corporations; or (B) inducing or attempting to induce such customer or referral source to cease doing business with or referring business to the Corporations, reduce the amount of business previously done or contemplated to be done by the Corporations for such customer; not engage the

Corporations to provide services to the customer, or not refer customers to the Corporations for services;

(iv) undertake the planning or organization of any business activity competitive with the Company or to directly or indirectly encourage any employees or Contractors of the Corporations to terminate their employment or Agreement with any of the Corporations in order to join such competitive business organization either being planned or organized directly or indirectly by CONTRACTOR.

(b) The Non-Compete Period shall be computed by excluding from such computation any time during which CONTRACTOR is in violation of any provision of Paragraph VII and any time during which there is pending in any court of competent jurisdiction any action (including appeal from judgment) brought by any person, whether or not a party to this Agreement, which action contests the validity or enforceability of any such covenant or seeks to avoid the performance or enforcement of any such covenant if such action shall be resolved in a manner that upholds any claims of the Corporations.

(c) The provisions of this Paragraph VII shall survive the termination or expiration of this Agreement and CONTRACTOR's Agreement, for any reason whatsoever.

(d) For purposes of Paragraph VII(a), the word "Indirectly" shall include (but not be limited to) acting through, or affecting the Corporations through, an intermediary or series of intermediaries, such as the use of or contact with independent Contractors or other third parties.

Filing 1 at 3-5; Filing 1-1 at 4-5.

NASI controlled Bryant's working conditions by requiring her to work specific hours from 8:00 AM to 5:00 PM, demanding she work overtime on nights and weekends, and mandating she complete a minimum of thirty outgoing calls per day. Filing 1 at 5-6. On July 30, 2021, Bryant provided NASI with two weeks' notice of her intent to resign her position. Filing 1 at 6. NASI instead terminated Bryant and required her to be available to assist with any questions it had about the providers she worked with in exchange for her final paycheck. Filing 1 at 6.

Bryant subsequently accepted a position with UnitiMed Recruiting Resources, LLC ("Recruiting Resources"), a Nebraska company. Filing 1 at 6. On August 26, 2021, NASI sent Bryant a letter demanding she immediately resign from Recruiting Resources because she was in

violation of the non-competition covenant of her contract with NASI. Filing 1-2 at 1-2. NASI threatened to commence litigation to enjoin Bryant from working in any capacity for a competing entity. Filing 1 at 7.

Bryant filed the present action seeking a declaratory judgment that the restrictive covenant is unenforceable, a temporary and permanent injunction, and damages for overtime violations pursuant to the Fair Labor Standards Act and Nebraska Wage Payment and Collection Act. Filing 1 at 8-11.

## II.   DISCUSSION

Bryant seeks a temporary restraining order preventing NASI "from enforcing the Restrictive Covenants." Filing 4 at 5.

In deciding a motion for a preliminary injunction, the court must consider "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). The same factors apply in determining whether to issue a temporary restraining order. *Baker Elec. Co-op., Inc. v. Chaske*, 28 F.3d 1466, 1472 (8th Cir. 1994). The burden of establishing the propriety of issuing a temporary restraining order is on the movant. *Id.* "No single factor is determinative." *WWP, Inc. v. Wounded Warriors, Inc.*, 566 F. Supp. 2d 970, 974 (D. Neb. 2008). The Court will address each of the *Dataphase* factors in turn.

### A. Choice of Law

As a preliminary matter, the Court must address what law will apply to the present dispute. The Agreement contains a provision specifying that Florida law should govern. Filing 1-1 at 7. In

4

spite of this clause, Bryant argues Nebraska law must apply because it has a greater material interest in the litigation. Filing 4 at 6. The Court agrees.

This Court applies the conflict-of-law rules for the state in which it sits. *See, e.g.*, *Inacom Corp. v. Sears, Roebuck & Co.*, 254 F.3d 683, 687 (8th Cir. 2001). The Restatement (Second) of Conflict of Laws governs in Nebraska. *Am. Nat. Bank v. Medved*, 801 N.W.2d 230, 237 (Neb. 2011); *see also Inacom Corp.*, 254 F.3d at 687 ("In deciding choice of law questions, Nebraska follows the Restatement (Second) of Conflict of Laws."). In general, Nebraska courts honor choice-of-law clauses. *Medved*, 801 N.W.2d at 236. However, section 187 of the Restatement (Second) of Conflict of Laws provides:

> (1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.
>
> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
>
> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Restatement (Second) of Conflict of Laws § 187 (1971); *see also Medved*, 801 N.W.2d at 237 (adopting section 187). A district court must first analyze whether section 187(1) applies. *See DCS Sanitation Mgmt., Inc. v. Castillo*, 435 F.3d 892, 896 (8th Cir. 2006).

Section 187(1) does not apply in this case because even with an explicit provision the parties could not confer on Nebraska courts the power to reform unenforceable noncompete

clauses pursuant to Florida law. *Compare CAE Vanguard, Inc., v. Newman*, 518 N.W.2d 652, 656 (Neb. 1994) ("The provision of the agreement which states that a court may reform the covenant is of no effect. Private parties may not confer upon the court powers which it does not possess."), *with White v. Mederi Caretenders Visiting Servs. Of Se. Fla., LLC, 226 So. 3d 774, 785 (Fla. 2017)* (recognizing judicial reformation of unenforceable noncompetition contracts). *See also Castillo*, 435 F.3d at 896 (holding that § 187(1) was inapplicable where law of both states differed on issue of reforming an unenforceable noncompete clause).

If section 187(1) is inapplicable, the Court must then determine if one of the exceptions under section 187(2) applies. *Castillo*, 435 F.3d at 896. The first question is which state has a more substantial and materially greater interest in enforcing the agreement between Bryant and NASI. *See id.; see also Hill v. Antioch Co.*, No. 8:09CV275, 2009 WL 3838251, at *4 (D. Neb. Nov. 17, 2009) (analyzing which state had "a materially greater interest . . . in the enforcement of the Consultant Agreement"). In this case, Nebraska has a greater interest in this agreement. The only connection to Florida is that NASI is incorporated in Florida. *See* Filing 1 at 2. In contrast, the connection to Nebraska is substantial and materially greater because Bryant is a Nebraska resident, she signed the agreement in Nebraska, and she performed services in Nebraska. Under these facts, Nebraska has a greater interest in the agreement than Florida. *See Castillo*, 435 F.3d at 896 (finding that Nebraska had a greater interest in the agreement when it was entered into in Nebraska, services were performed in Nebraska, former employees resided in Nebraska, the defendant did business in Nebraska, and the noncompete clause "directly and materially affect[ed] employment in Nebraska"); *see also Hill*, 2009 WL 3838251, at *4 (finding that Nebraska had a greater interest in an agreement when the plaintiff resided in Nebraska, the plaintiff performed services primarily in Nebraska, and because "Nebraska has a significant interest in the employment of its citizens");

*Powell v. Am. Charter Fed. Sav. & Loan Ass'n*, 514 N.W.2d 326, 332 (Neb. 1994) (holding that the state with the most significant relationship in the transaction was the state where the parties contracted and resided, where the subject matter was located, and where performance took place).

Finally, the Court must ask whether application of Florida law "would violate a fundamental policy of Nebraska law." *Castillo*, 435 F.3d at 897. In this case, it would. Nebraska caselaw has consistently rejected the "blue pencil" rule, whereby a court has the power "to reform a covenant not to compete in order to make it enforceable." *Unlimited Opportunity, Inc. v. Waadah*, 861 N.W.2d 437, 441 (Neb. 2015). The Nebraska courts so hold because reforming a noncompete clause "creates uncertainty in employees' contractual relationships with franchisors, increases the potential for confusion by parties to a contract, and encourages litigation of noncompete clauses in contracts." *Id.* at 634-35. However, Florida commands by statute "to modify, or blue pencil, a non-competition agreement" that is unenforceable. *White*, 226 So. 3d at 785 (citing Fla. Stat. § 542.335(1)(c)). Applying Florida law in this case would be contrary to the policy of Nebraska, the state with the most substantial interest in the agreement. Therefore, under Nebraska's choice of law approach, the Court will apply Nebraska law.

## B.     Likelihood of Success on the Merits

Turning to the *Dataphase* factors, the Court will first consider the likelihood Bryant will succeed on the merits of its claims. "In deciding whether to grant a preliminary injunction, likelihood of success on the merits is most significant." *S.J.W. ex rel. Wilson v. Lee's Summit R-7 Sch. Dist.*, 696 F.3d 771, 776 (8th Cir. 2012) (internal quotation marks omitted) (quoting *Minn. Ass'n of Nurse Anesthetists v. Unity Hosp.*, 59 F.3d 80, 83 (8th Cir. 1995)). A movant need not prove it is more likely than not to prevail, but "need only show a reasonable probability of success, that is, a 'fair chance of prevailing'" on the merits. *Kroupa v. Nielsen*, 731 F.3d 813, 818 (8th Cir.

2013) (quoting *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 732 (8th Cir. 2008) (en banc)). Here, Bryant has adduced evidence demonstrating she is reasonably likely to succeed on her claims in Count I and II alleging that the noncompete provisions of the Agreement are unenforceable. Filing 1 at 8-9.

Nebraska courts will only enforce an agreement which restricts an employee from soliciting customers with whom the employee had personal contact and with whom the employee did business on behalf of the former employer. *See Mertz v. Pharmacists Mutual Ins. Co.*, 625 N.W.2d 197, 204-05 (Neb. 2001) ("As a general rule, a covenant not to compete in an employment contract may be valid only if it restricts the former employee from working for or soliciting the former employer's clients or accounts with whom the former employee actually did business and has personal contact." (Internal quotation marks omitted)); *see also AON Consulting, Inc. v. Midlands Fin. Benefits, Inc.*, 748 N.W.2d 626 (Neb. 2008). Nebraska law does not allow direct or indirect restrictions that limit an individual's ability to compete, unless narrowly tailored and no more restrictive than reasonably necessary to protect the employer's interests. *Whitten v. Malcolm*, 541 N.W.2d 45 (Neb. 1995); *DCS Sanitation Mgmt., Inc.*, 435 F.3d at 897.

When determining whether a covenant not to compete is valid, Nebraska courts consider whether the restriction is (1) reasonable in the sense that it is not injurious to the public, (2) not greater than is reasonably necessary to protect the employer in some legitimate interest, and (3) not unduly harsh and oppressive on the employee. *Mertz*, 625 N.W.2d at 204 (citing *Prof'l Bus. Servs. v. Rosno*, 589 N.W.2d 826 (1999)).

The restrictive covenants in the agreement at hand are overly broad. In particular, rather than restricting Bryant from soliciting only clients she previously worked with at NASI, the Agreement prevents her from "be[ing] connected in any manner with . . . any business . . . that . .

. competes" with NASI. Filing 1-1 at 4-5. Because the restrictive covenants are not narrowly tailored as required by Nebraska law, Bryant has shown a great likelihood of success on her claim of unenforceability.

### B.      Threat of Irreparable Harm

Under the next *Dataphase* factor, the movant must "demonstrate that irreparable [harm] is *likely* in the absence of an injunction." *Sierra Club v. U.S. Army Corps of Eng'rs*, 645 F.3d 978, 992 (8th Cir. 2011) (emphasis in original) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22, 192 S. Ct. 365, 172 L. Ed. 2d 249 (2008). "[I]rreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Grasso Enters., LLC v. Express Scripts, Inc.*, 809 F.3d 1033, 1040 (8th Cir. 2016) (quoting *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009)).

Bryant had shown a threat of irreparable harm should the court fail to issue the temporary restraining order. She alleges she will be forced to resign from her current employment and will be unable to seek further employment in her specialized area. Filing 1 at 10. She claims this will result in her being unable to earn a living. Filing 1 at 10. Any such harm would be irreparable due to Bryant's complete inability to obtain employment in the entire field of her expertise. Thus, Bryant had shown a likelihood of more than financial loss but rather irreparable harm to her very livelihood and her opportunity to pursue employment in her field of expertise.

### C.      Balance of Injury to the Parties

When issuing a temporary restraining order courts must assess whether the "balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Dataphase*, 640 F.2d at 113. To determine the harms that must be weighed, the Eighth Circuit has looked at the threat to each of the parties' rights that would

9

result from granting or denying the injunction. *Baker Elec.*, 28 F.3d at 1473. A Court also must consider the potential economic harm to each of the parties and to interested third parties. *Id.*

As discussed above, the threat of harm to Bryant in the absence of a restraining order is significant. In contrast, the potential harm NASI will suffer if a temporary restraining order is issued is minimal. It will not be prevented from conducting any of its business, maintaining its current customers, or recruiting new clients. Thus, the balance of injuries to the parties weighs in favor of issuance of the temporary restraining order. This relatively small threat of harm to NASI likewise justifies the need for only a modest bond in this matter, in the amount of $500.00.

### D.   Public Interest

Lastly, the Court concludes that the public interest favors issuance of a temporary restraining order.

The Nebraska public interest disfavors overly broad noncompete agreements like that alleged in this case. *See, e.g.*, *Mertz*, 625 N.W.2d at 204-05; *see also Koenig v. CBIZ Benefits & Ins. Servs.*, No. 8:04CV486, 2005 WL 8176172, at *2 (D. Neb. May 13, 2005) (finding the public interest in avoiding "broad covenants [that] would inhibit employees from finding nearly any job in their respective fields of work" favored injunctive relief). Furthermore, it is a "fundamental policy of Nebraska law" not to allow judicial reformation of noncompete agreements. *DCS Sanitation Mgmt., Inc. v. Castillo*, 435 F.3d 892, 897 (8th Cir. 2006). Thus, this factor also weighs in favor of issuance of the temporary restraining order.

### E. Notice

Bryant seeks a temporary restraining order without notice to NASI. Federal Rule of Civil Procedure 65 provides:

> The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:

(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

(B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1). As to the first prong, Bryant has shown in her verified complaint that NASI has threatened to commence litigation regarding the Agreement which will affect Bryant's rights, status, and other legal relations in connection with her employment and future employment. Filing 1 at 9. As to the second prong, Bryant's attorney states in her motion that she has not made efforts to give notice to NASI because it has demanded Bryant's immediate resignation and "aggressively threatened" legal action. Filing 3 at 2. The Court reads the verified allegations to constitute the potential for an immediate impact on Bryant's livelihood and ability to retain her job if notice is provided to NASI prior to the issuance of this temporary restraining order. Thus, the Court concludes that under Rule 65(b), a temporary restraining order is warranted without notice to NASI.

This Court is cognizant that the Federal Rules of Civil Procedure require that when a temporary restraining order is issued without notice, the Court is to set the preliminary injunction hearing "at the earliest possible time, taking precedence over all other matters except hearings on older matters of the same character." Fed. R. Civ. P. 65(a)(3). Given this directive, the Court sets the preliminary injunction hearing for Thursday, September 2, 2021, at 1:00 PM. The Court will entertain a motion from the defendant in this matter to move this hearing to another date that is more convenient to NASI. The Court further directs Bryant to provide a copy of this Order to NASI via e-mail with a subsequent phone call to NASI notifying it that the order was issued in this matter and that a hearing on the preliminary injunction has been scheduled. This temporary

restraining order will remain in effect at least until a preliminary injunction hearing takes place on this matter.

## III.  CONCLUSION

The Court concludes Bryant's Motion for Temporary Restraining Order, Filing 3, should be granted for the reasons set forth herein. Accordingly,

IT IS ORDERED:

1. Plaintiff's Motion for Temporary Restraining Order (Filing 3) is granted;

2. Defendant is enjoined from enforcing the restrictive noncompetition and non-solicitation covenants contained in the parties' Independent Contractor Agreement dated February 15, 2021, the relevant text of which is included in Part I of this Order;

3. Pursuant to Rule 65(c), the Court requires Plaintiff to post a cash or surety bond with the Clerk of the Court in the amount of $500.00;

4. The hearing on Plaintiff's request for preliminary injunction will take place on September 2, 2021, at 1:00 PM before the undersigned judge in Courtroom No. 5, Third Floor, Roman L. Hruska United States Courthouse, 111 South 18th Plaza, Omaha, Nebraska 68102;

5. Plaintiff is ordered to provide notice to Defendant of the preliminary-injunction hearing by no later than 2:00 PM on September 1, 2021, in accordance with the directions in this order; and

6. This Temporary Restraining Order will expire at 11:50 PM on September 14, 2021, unless extended or vacated. The Court directs the parties to review Federal Rule of Civil Procedure 65(b) which allows an extension of a temporary restraining order only by consent of the adverse party or for good cause.

12

DATED this 1st day of September, 2021, at 9:00 AM.

BY THE COURT:

Brian C. Buescher
United States District Judge